OPINION
{¶ 1} After the trial court overruled his motion to suppress evidence, Vincent Thomason pleaded no contest to a bill of information charging attempt to commit possession of cocaine, a third degree felony. The trial court made a finding of guilty and sentenced Thomason to two years incarceration.
 {¶ 2} On appeal, Thomason advances a single assignment of error:
 {¶ 3} "The trial court erred in overruling appellant's motion to suppress because the arresting officer did not have a reasonable and articulable basis for a pat-down search of appellant."
 I. {¶ 4} The trial court made comprehensive findings of fact which — with one exception that will be noted — are amply supported by the suppression hearing testimony and are reproduced here.
 {¶ 5} "Officer Kowalski is a City of Dayton police officer who was assigned to street patrol in the Second District. In the past, Officer Kowalski had worked on the undercover drug unit as an undercover drug detective for about 14 months and also on the Strike Force Unit for 22 months.
 {¶ 6} "On January 12, 2003, around 1:00 A.M., Kowalski was working near the 100 block of N. Patterson Blvd. in Montgomery County. Kowalski became alerted to a blue Chevy Suburban when he noticed that the vehicle did not have a front license plate. After the vehicle passed in front of him, Kowalski began to follow the vehicle. During the time that he was following the vehicle, Kowalski observed that the back window and the side windows of the vehicle were tinted dark, and that the left turn signal was not functioning properly. Kowalski also noticed that when the vehicle would apply the brakes, the taillight would go out.
 {¶ 7} "After seeing the violations for the front plate and the malfunctioning turn signal, Kowalski ran the license plate through the computer system. When the information came back to him, he learned that the registered owner of the vehicle had an F.I.C. alert indicating that he had previously been arrested or had previously been found with a handgun. At that point, Kowalski initiated a stop. When the defendant pulled over to the side of the road, Kowalski noticed him moving around inside the vehicle. Kowalski also noticed the defendant bend forward and then turn around toward him.
 {¶ 8} "Kowalski exited his vehicle and approached the passenger side of the vehicle for safety reasons. He initially contacted the driver from that side, and then after talking with him a brief moment, Kowalski moved around to the driver's side of the vehicle to continue contact with the defendant. Kowalski was going to issue a traffic citation at that point. Due to the dark tint on the windows and the circumstances of the movements, he did not feel safe leaving the defendant in the vehicle while he wrote the citations. Kowalski asked the defendant if he had any weapons, to which the defendant answered, `No, you can check me.' Kowalski then asked the individual to step out of the car so he could check him for weapons. Prior to patting down the defendant, Kowalski asked the defendant four times if there was anything else on him that he should know about and the defendant did not reply.
 {¶ 9} "When the defendant did not reply, Kowalski became concerned that the defendant might have needles or blades in his pockets which might harm or cut him. Kowalski then asked the defendant if he smoked weed and the defendant replied that he did not. While Kowalski was in the process of patting the defendant down, he again asked the defendant if there was anything else on him and the defendant replied, `I smoke dope.' At that point, Kowalski was patting down the front pockets of the defendant and he felt what he recognized as a plastic baggy as well as a chunky, rock like substance. Kowalski pulled the baggy out of the left front pocket of the defendant and asked him if this was his crack-cocaine to which the defendant replied yes. Kowalski then arrested the defendant. Prior to having the vehicle towed for evidentiary purposes, Kowalski checked over the vehicle and found a digital scale with cocaine residue on it."
 {¶ 10} (Officer Kowalski actually described the retrieval of the crack cocaine as follows:
 {¶ 11} "After he had told me that he smokes dope, it was while I was in the process of patting him down. The chunk that I had felt was a pretty large item, wasn't anything small, turned out to be about ten grams of the substance. And as I was feeling around the left front pocket area, I could feel a plastic baggie which I know in my experience is commonly used to package illegal drugs. I've also felt hundreds of times the feel of crack cocaine, which is pretty distinctive when felt through a pocket.
 "* * * {¶ 12} "I asked him, `Is this your crack in your pocket,' and he replied, `Yes.' At that point I handcuffed him and recovered the item that he indicated was crack cocaine.")
 II. {¶ 13} Thomason does not question the propriety of the traffic stop and somewhat begrudgingly acknowledges the propriety of Officer Kowalski's asking him to exit the car while he wrote the traffic citation. However, he contends that Officer Kowalski lacked a reasonable, articulable suspicion that he was armed so as to justify a pat down for weapons.
 {¶ 14} The trial court found, and we agree, that the circumstances reasonably supported Officer Kowalski's articulated concern that Thomason might be armed. The traffic stop was effected around 1:00 a.m. on a Sunday morning. Prior to making the stop, Kowalski had learned that the registered owner of the car had an F.I.C. alert indicating a previous arrest for or previous possession of a handgun. After Thomason's car stopped, Kowalski observed Thomason making certain bending and turning movements inside the car. In response to a question by the court, Kowalski testified "of course, I couldn't see what he was doing. He had bent forward and twisted to his left. The windows were tinted, which obstructed my view into the vehicle."
 {¶ 15} Although not a basis for the trial court's decision, the State argues — and we again agree — that the facts also support a determination that Thomason consented to the pat down for weapons, which would obviate the requirement of a reasonable, articulable suspicion that Thomason was armed. The facts do not bear out Thomason's suggestion that his consent was obtained during an illegal detention. Indeed, he acknowledges the propriety of the stop and the order that he exit the car while the citation was being written.
 {¶ 16} Finally, Thomason contends that Officer Kowalski's questions to him were improper absent prior Miranda warnings, but it is clear from this record that Thomason was not in custody when these questions were asked and that Miranda warnings were thus not required.
 {¶ 17} The motion to suppress was properly overruled.
 {¶ 18} The assignment of error is overruled.
 {¶ 19} The judgment will be affirmed.
Grady, J. and Young, J., concur.